# UNITED STATES DISTRICT COURT
### *for the*
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SNAPTAGZ, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 12-CIV-1189 |
| BRENNAN O'LEARY; DAN HALL; JOHN NIERMANN; THE COZMIX COLLECTIVE; AND, JON DOES 1-10 (FICTITIOUSLY NAMED), | |
| Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BRENNAN O'LEARY'S MOTION FOR AN ORDER REQUIRING ADVANCEMENT OF LEGAL FEES AND EXPENSES

# TABLE OF CONTENTS

**Page #**

TABLE OF AUTHORITIES ............................................................................... ii

BACKGROUND ............................................................................................1

STATEMENT OF FACTS .................................................................................2

LEGAL ARGUMENT.....................................................................................3

      POINT I

      DEFENDANT IS NOT ENTITELD TO ADVANCEMENT BECAUSE HE
      VOLUNTARILY RESIGNED FROM SNAPTAGZ AND SURRENDERED HIS
      MEMBERSHIP INTEREST...............................................................................3

      POINT II

      DEFENDANT IS NOT ENTITILED TO ADVANCEMENT AS DEFENDANT DENIES
      ANY ASSOCIATION BETWEEN HIS ACTS AND HIS ROLE AS MANAGER OR
      MEMBER OF SNAPTAGZ ..............................................................................6

      POINT III

      ASSUMING, *ARGUENDO*, THAT THERE IS A DUTY TO ADVANCE FUNDS,
      DEFENDANT IS NOT ENTITLED TO ADVANCEMENT OF EXPENSES
      INCURRED TO PROSECUTE CLAIMS AGAINST THE COMPANY .........................7

      POINT IV

      ASSUMING, *ARGUENDO*, THAT THERE IS A DUTY TO ADVANCE FUNDS,
      DEFENDANT HAS FAILED TO SHOW THAT ANY MONIES HAVE BEEN
      ADVANCED BY DEFENDANT AND THE CLAIMED "ADVANCES" ARE
      UNREASONABLE .........................................................................................7

      POINT V

      ASSUMING, *ARGUENDO*, THAT THERE IS A DUTY TO ADVANCE FUNDS,
      DEFENDANT SHOULD BE REQUIRED TO POST COLLATERAL TO PROTECT
      PLAINTIFF'S  RIGHT TO REPAYMENT ..........................................................8

CONCLUSION..............................................................................................9

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                  <u>Page #</u>

<u>Bernstein v. Tractmanager Inc.</u>, 953 A.2d 1003 (Del. Ch. 2007)......................................3

<u>Fasciana v. Electronic Data Systems Corp.</u>, 829 A.2d 160 (Del. Ch. 2003) ..................6

<u>George v. Frank A. Robino, Inc.</u>, 334 A.2d 223 (Del. Supr. 1975)..................................4

<u>Homestore Inc. v. Peter Tafeen</u>, 888 A.2d 204 (Del. 2005) ...........................................5

<u>Majkowski v. Am. Imaging Mgmt. Servs.</u>, 913 A.2d 572, 581 (Del. Ch. 2006)............7

<u>Nemec v. Schraeder</u>, 991 A.2d 1120 (Del. 2010) ...........................................................5

<u>Realty Growth Investors v. Council of Unit Owners</u>, 453 A.2d 450 (Del. 1982) ..........4

<u>Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.</u>, 616 A.2d 1192 (Del. 1992)...........7

<u>Rockwell v. Rockwell</u>, 681 A.2d 1017 (Del. 1996)........................................................5

<u>Senior Tour Players 207 Management Co. LLC v. Golftown 207 Holding Co. LLC</u>,
853 A.2d 124 (Del. Ch. 2004)........................................................................................8

## BACKGROUND

Plaintiff Snaptagz LLC ("Snaptagz") is a New York-based company engaged in the development of certain apparel products for eventual sale and market to the general public. Snaptagz is also the licensee of several patents related to the products it continues to develop. Snaptagz operates pursuant to a Limited Liability Company Agreement (the "Agreement"), dated May 5, 2011.   The Members of Snaptagz as of the May 2011 Agreement included two investment companies and one individual, Defendant Brennan O'Leary.

On November 8, 2011, Mr. O'Leary voluntarily surrendered, for immediate cancellation, his membership interest in Snaptagz.  Mr. O'Leary also voluntarily resigned as a Manager of Snaptagz.  Following his resignation and surrender, Mr. O'Leary formed his own company, The Cozmix Collective, to develop, market and sell the same product that Snaptagz had been working to develop.  Mr. O'Leary utilized not only confidential information he gained while a member of Snaptagz, he also infringed upon the patents for which Snaptagz holds the licenses.

Upon learning of this conduct and infringement, Snaptagz filed suit against Mr. O'Leary and his partners, seeking to enjoin Defendants from committing further acts of infringement, precluding O'Leary from the manufacturing, sale or marketing of the infringing goods, and requesting that the Court award monetary damages.  Prior to filing its Answer to the Complaint, Defendant O'Leary applied for an order requiring Snaptagz to advance his legal fees and expenses.  As set forth in detail herein, Defendant's arguments have no merit, and Defendant's motion should be denied in its entirety.

## STATEMENT OF FACTS

As set forth in Defendant's moving papers, the request for advancement of fees is premised upon Section 2.6 of the Agreement, which states as follows:

2.6 Indemnification

(a) The Company shall indemnify, defend and hold harmless each of the Managers and, to the extent the Board of Managers shall expressly so require, any Members, any, officers, directors, agents, employees, advisors and consultants of the Company or any Member (each such person being an "Indemnitee"), from and against any and all loss, liability, damage, cost or expense, including reasonable attorneys' fees, suffered or incurred in defense of any demands, claims or lawsuits against such Indemnitee in or as a result of or relating to his or its capacity, actions or omissions as a Manager, or as an officer, director, agent, employee, advisor or consultant of the Company or any Member, or concerning the Company or any activities undertaken on behalf of the Company, including, without limitation, any demand, claim or lawsuit initiated by or on behalf of any Member, provided that the acts or omissions of such Indemnitee are not found by a court of competent jurisdiction upon entry of a final judgment to be the result of fraud, bad faith or intentional misconduct, or to have violated such a lesser standard of conduct as under applicable law prevents indemnification hereunder.

(b) Each Indemnitee shall be entitled to receive, upon request therefore, advances to cover the costs of defending any claim or action against it or him; provided, that such advances shall be repaid to the Company, without interest, if such Indemnitee is found by a court of competent jurisdiction upon entry of a final judgment to have violated the standards for indemnification set forth in the immediately preceding subsection (a). All rights of any Indemnitee shall survive the dissolution of the Company or any Subsidiaries and the death, retirement, removal, dissolution, incompetence or insolvency of any such Indemnitee.

See Agreement, attached as Exhibit "2" to the Declaration of Richard G. Schoenstein in Support Defendant's Motion (hereinafter "Schoenstein Decl.")

On November 8, 2011, Mr. O'Leary voluntarily surrendered, for immediate cancellation, his membership interest in Snaptagz. See letter, attached as Exhibit "A" to the Declaration of John M. Deitch, Esq. (hereinafter "Deitch Decl.") Mr. O'Leary also voluntarily resigned as a Manager of Snaptagz. See letter, attached as Exhibit "B" to the Deitch Decl. Thereafter, Mr. O'Leary's new company, The Cozmix Collective, began marketing and selling products which infringe upon the patents which Snaptagz has licensed.

Following the filing of Plaintiff's Complaint, Mr. O'Leary, through counsel, made a demand for indemnification and advancement.  See letter, dated April 16, 2012, attached as Exhibit "4" to the Schoenstein Decl.  On April 30, 2012, Defendant filed the instant motion.

## LEGAL ARGUMENT

## POINT I.

## DEFENDANT IS NOT ENTITILED TO ADVANCEMENT BECAUSE HE VOLUNTARILY RESIGNED FROM SNAPTAGZ AND SURRENDERED HIS MEMBERSHIP INTEREST

On November 8, 2012, Mr. O'Leary resigned as a Manager of Snaptagz.  See Letter of Resignation, Ex. "B" to the Deitch Decl.  On that day, Mr. O'Leary also surrendered his Membership Interest in Snaptagz.  See Letter, Ex "A" to the Deitch Decl.  These actions were voluntary made by Mr. O'Leary, presumably to pursue his own interests.

Section 2.6(b) of the Agreement, which governs Snaptagz' advancement obligation, specifically does not include any reference to resignation:

> All rights of any Indemnitee shall survive the dissolution of the Company or any Subsidiaries and the death, retirement, removal, dissolution, incompetence or insolvency of any such Indemnitee.

Mr. O'Leary's voluntary resignation does not meet any of the circumstances set forth in the Agreement which would potentially provide for continued indemnification and/or advancement.  Under Delaware law, a Court will not rewrite a contract by reading words into it that the parties did not intend.  See, e.g., Bernstein, 953 A.2d 1003, 1010-1011 (Del. Ch. 2007) (finding plaintiff not entitled to advancement for acts which did not occur during his time as director and officer of defendant company, and rejecting request to rewrite agreement to enlarge time).  It is anticipated that Mr. O'Leary will claim that he "retired" from Plaintiffs' service.  However, a review of his letters of November 8, 2001 do not reference a retirement at all.  They state:

- "I hereby tender my resignation as a Manager of the Company, such resignation to take effect immediately."  Exhibit "B" to the Deitch Decl.;

- "I hereby surrender, for **immediate cancellation**, My Membership Interest in the Company. All capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Limited Liability Company Agreement of the Company made as of the 5th day of May, 2011." Exhibit "A" to the Deitch Decl. (emphasis added).

The LLC Agreement defines Membership Interest as follows:

> The term "Membership Interest" **means a Member's aggregate rights with respect to the Company**, as Member with respect to his Units, including, without limitation the members right to shares of various categories of Net Income and Net loss (as such terms are hereinafter defined), the right to receive distributions from the Company and the right, if any, to vote or grant consents or participate in the management of the Company, with respect to its Units. (emphasis added).

Exhibit "2" to the "Schoenstein Decl."

As can be seen, Mr. O'Leary did not "retire" from the company.  To the contrary, he resigned, voluntarily surrendered and cancelled any right to indemnity and/or expense advancement he may have had under the LLC Agreement.  Cancellation has been defined as "an annulment or termination of a promise or an obligation," and surrender has been defined as "the giving up of a right or claim." BLACK'S LAW DICTIONARY 197, 1458 (7th ed. 1999).  Through his actions, Mr. O'Leary waived any theoretical right he had to advancement or indemnity.  See, e.g., Realty Growth Investors v. Council of Unit Owners, 453 A.2d 450, 456 (Del. 1982) (citing 28 Am.Jur.2d, Estoppel and Waiver, § 158 (1966); George v. Frank A. Robino, Inc., 334 A.2d 223, 224 (Del. Supr. 1975).

Here, there is no question that Mr. O'Leary was aware of all facts, and intended to waive his rights under the LLC Agreement. Mr. O'Leary, an original member of the LLC who executed the original LLC Agreement, voluntarily resigned as Manager and surrendered his rights as a

Member of the LLC.  He did so knowing that by surrendering his Member and resigning as Manager, he no longer would receive the protections offered by the LLC Agreement.  Defendant, who admits that he left to pursue his own venture (based upon the information he had obtained at Snaptagz), cannot now attempt to rewrite the LLC Agreement so that it provides indemnity to individuals who voluntarily surrender all rights they have under the Agreement. Delaware Courts routinely hold that courts should not rewrite contracts.  See, e.g., Nemec v. Schraeder, 991 A.2d 1120, 1126 (Del. 2010) (Courts should "not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal.  Parties have a right to enter into good and bad contracts, the law enforces both."); Rockwell v. Rockwell, 681 A.2d 1017, 1021 (Del. 1996) ("Delaware follows the well-established principle that in construing a contract a court cannot in effect rewrite it or supply omitted provisions.") (internal citations omitted).

Further, Delaware Courts have reasoned that advancement provisions serve as an inducement to attract "the most capable people into corporate service."  See, e.g., Homestore Inc. v. Peter Tafeen, 888 A.2d 204, 218 (Del. 2005) (internal citations omitted).  The inverse is likewise reasonable and fair – if an individual voluntarily resigns from corporate service, and surrenders whatever rights he may have under the LLC Agreement, the corporation can no longer be expected to protect and provide for that individual, particularly for acts which the indemnitee say arose entirely outside of his former service to the corporation.

Accordingly, any rights to indemnification or advancement Mr. O'Leary may have arguably had under the Agreement did not survive his voluntary resignation and surrender of membership interest.

## POINT II

## DEFENDANT IS NOT ENTITILED TO ADVANCEMENT AS DEFENDANT DENIES ANY ASSOCIATION BETWEEN HIS ACTS AND HIS ROLE AS MANAGER OR MEMBER OF SNAPTAGZ

The Agreement provides that Snaptagz is to indemnify and provide advancement of fees to qualifying individuals, but only with respect to claims:

> as a result of or relating to his or its capacity, actions or omissions as a Manager, or as an officer, director, agent, employee, advisor or consultant of the Company or any Member, or concerning the Company or any activities undertaken on behalf of the Company.

The claims at issue here are not a result of or related to Mr. O'Leary's role as a Member and Manager of Snaptagz. Instead, they relate to Mr. O'Leary's own self-dealing, and specifically concern his usurpation of corporate opportunity and the misuse of confidential information *after* his resignation from the company.  Likewise, the infringement upon the patents licensed to Snaptagz also occurred following Mr. O'Leary's resignation, and are also not related to his actions or omissions as a Member and Manager of Snaptagz.

Under Delaware law, where claims do not arise out of an a qualified individual's capacity, actions or omissions as a Member, Manager, etc. of the company, advancement is not granted.  See, e.g., Fasciana v. Electronic Data Systems Corp., 829 A.2d 160 (Del. Ch. 2003) (limiting advancement to claims which arise out of individual's conduct as an agent of the company).  Similarly, the actions or omissions at issue must occur during a qualified individual's time as a Member, Manager, etc.  See, e.g., Bernstein v. Tractmanager Inc., 953 A.2d 1003, 1010-1011 (Del. Ch. 2007) ("conduct complained of must occur at a time when one is a corporate officer or director").

Here, Mr. O'Leary asserts that he did not formulate his product or begin to compete with Plaintiff until after his termination. If so, his claims for advancement are without basis.

## POINT III

**ASSUMING, *ARGUENDO*, THAT THERE IS A DUTY TO ADVANCE FUNDS, DEFENDANT IS NOT ENTITLED TO ADVANCEMENT OF EXPENSES INCURRED TO PROSECUTE CLAIMS AGAINST THE COMPANY.**

In his moving papers, Defendant says he will pursue claims relating to breaches of contract and obligation by Snaptagz and its principals, some of whom may be added as parties. See Brief, at pg. 3. Reimbursement can only be as broad as indemnity, and indemnity does not extend to the prosecution of claims.  The indemnity provision of the Agreement specifically requires indemnity only for loss "suffered or incurred **in defense** of any demands, claims or lawsuits **against such Indemnitee**..."  (Emphasis Added)  The court should enforce the LLC Agreement as written.  See, e.g., Majkowski v. Am. Imaging Mgmt. Servs., 913 A.2d 572, 581 (Del. Ch. 2006) ("When the language of a contract is plain and unambiguous, binding effect should be given to its meaning."  (citing Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992)).   Accordingly, pursuant to the terms of the LLC Agreement, Defendant's potential counter-claims and/or affirmative defenses do not qualify for indemnity or advancement.

## POINT IV

**ASSUMING, *ARGUENDO*, THAT THERE IS A DUTY TO ADVANCE FUNDS, DEFENDANT HAS FAILED TO SHOW THAT ANY MONIES HAVE BEEN ADVANCED BY DEFENDANT AND THE CLAIMED "ADVANCES" ARE UNREASONABLE.**

In requesting that Plaintiff be required to advance funds, Mr. O'Leary has offered no substantial evidence to establish that any monies have in fact been paid.  No retainer agreement has been produced by Defendant.  More significantly, there is no law or rule which dictates that a Defendant in this type of action is required to provide his counsel with a retainer.  As such, Plaintiff should not be required to advance the $15,000 retainer allegedly paid by Mr. O'Leary. Instead, if Plaintiff is required to advance funds, such funds should be limited to fees and

expenses actually incurred in the defense of Mr. O'Leary against claims arising out of his role as Manager / Member.

In addition, the initial invoice presented by Mr. O'Leary (Ex. "4" to the Schoenstein Decl.) is devoid of specificity, and presents unreasonable rates.  The hourly rate is a blended $531.46, which Plaintiff submits is unreasonable in a matter of this type.  Further, there is no specificity as to the allocation of the work reflected on the invoice.  On its face, Plaintiff is unable to ascertain if the work was performed for Mr. O'Leary or other defendants, and further, if the work is in connection with claims against Mr. O'Leary arising out of his role as Manager / Member, or in connection with other claims which do not qualify for advancement.  Plaintiff submits that if it is required to advance fees and expenses, that the Court must establish a process requiring detailed invoices and a definitive reasonable rate.

## POINT V

### ASSUMING, *ARGUENDO*, THAT THERE IS A DUTY TO ADVANCE FUNDS, DEFENDANT SHOULD BE REQUIRED TO POST COLLATERAL TO PROTECT PLAINTIFF'S  RIGHT TO REPAYMENT.

Mr. O'Leary is an individual and a Canadian citizen.  Plaintiff is unaware of any known assets in the United States.  As such, Plaintiff is concerned that should the Court award Defendant advancement of his fees and expenses, and there is later found to be no right to indemnification, it will be impossible for Snaptagz to recover the advancement.  While the Delaware Chancery Court has previously held that a written undertaking to repay will not be required (see, e.g., Senior Tour Players 207 Management Co. LLC v. Golftown 207 Holding Co. LLC, 853 A.2d 124 (Del. Ch. 2004), Plaintiff submits that the facts of this matter dictate a different holding.  Given Mr. O'Leary's prior self-dealing and infringement practices, Plaintiff submits that Mr. O'Leary should be required to post collateral to protect Plaintiff's right to repayment.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully submits that Defendant Brennan O'Leary's motion should be denied in its entirety.   Alternatively, Plaintiff submits that advancement of fees should be limited only to those portions of Plaintiff's claims which are a result of Mr. O'Leary's capacity, actions or omissions as a Manager or Member of Snaptagz, as determined by the Court.

Dated: May 14, 2012

**MENDES & MOUNT, LLP**
Attorneys for the Plaintiff

By:  _____
John M. Deitch, Esq. (JD5221)
MENDES & MOUNT, LLP.
One Newark Center, 19th Floor
Newark New Jersey, 07102

(973) 639-7300